```
              UNITED STATES DISTRICT COURT

                DISTRICT OF NEW HAMPSHIRE
```

United States of America

    v.                                        Criminal No. 09-cr-177-1-SM
                                              Opinion No. 2010 DNH 070

Robert Gallant

**O R D E R**

A grand jury returned an eleven-count superseding indictment against Robert Gallant on January 20, 2010, charging him with six counts of false representation of a social security number, in violation of 42 U.S.C. § 408(a)(7)(B) (Counts I, III, IV, V, VII, and VIII); four counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) (Counts II, VI, IX, and XI); and one count of bank fraud, in violation of 18 U.S.C. § 1344 (Count X). Gallant moves to dismiss Counts II, VI, IX, X, and XI. The government objects.

**Background**

The superseding indictment charges that Gallant falsely presented a social security number to the New Hampshire Department of Motor Vehicles as his own (Count I), and, in relation to that crime, he also unlawfully used someone else's identity — their name, date of birth, and social security number (with two of the numerals reversed) (Count II). Similarly,

Counts III, IV, and V allege, respectively, that Gallant falsely presented a social security number as his own to the Gilmanton, Loudon, and Manchester, New Hampshire, police departments.  Count VI alleges that, in relation to those crimes, Gallant unlawfully used someone else's identity — their name, date of birth, place of birth, and social security number (with two of the numerals reversed).  Following this pattern, Counts VII and VIII allege that defendant falsely represented a social security number as his own to, respectively, the Concord District Court and a local bail commissioner, and the Rochester District Court and a local bail commissioner.  Count IX alleges that, in relation to Counts VII and VIII, Gallant unlawfully used someone else's identity — their name, date of birth, and social security number (with two of the numerals reversed).

Count X alleges that Gallant defrauded TD Bank by using someone else's identity — their name, date of birth, and social security number (with two numerals reversed) to open and then overdraw a checking account.  Count XI alleges that, in relation to Count X, Gallant used someone else's identity — their name, date of birth, social security number (with two numerals reversed), and a fraudulently obtained New Hampshire driver's license bearing someone else's name and date of birth.

It is undisputed for purposes of this motion that defendant used the name, date of birth, and place of birth of Robert Gordon Mann, who was born on February 22, 1964, in St. Louis, Missouri. Robert Mann's social security number is XXX-XX-9048, while the social security number defendant used was XXX-XX-0948. The social security number ending in -0948 was actually issued to one Mabel Parker, who is now deceased.

**Standard of Review**

A motion to dismiss counts of an indictment tests the sufficiency of those counts to charge an offense. See United States v. Sampson, 371 U.S. 75, 79 (1962); United States v. Bohai Trading Co., Inc.. 45 F.3d 577, 578 n.1 (1st Cir. 1995); United States v. Thompson, 595 F. Supp. 2d 143, 145 (D. Me. 2009). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. Ditomasso, 552 F. Supp. 2d 233, 238 (D.R.I. 2008) ("The issue in judging the sufficiency of the indictment is whether the indictment adequately alleges the elements of the offense and fairly informs the defendant of the charge, not whether the Government can prove its case.")

(quotation marks omitted).  Because a challenge to the indictment does not test the government's case, "[c]ourts should . . . avoid considering evidence outside the indictment when testing the indictment's legal sufficiency."  United States v. Todd, 446 F.3d 1062, 1067 (10th Cir. 2006).  In ruling on a motion to dismiss counts of an indictment, the factual allegations of those counts are taken as true.  Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 343 n.16 (1952); Bohai Trading Co., 45 F.3d at 578 n.1.

## Discussion

A.  "Means of Identification" in Counts II, VI, IX, and XI

Gallant moves to dismiss Counts II, VI, IX, and XI, on grounds that those counts do not adequately allege the use of a "means of identification" as defined by 18 U.S.C. § 1028(d)(7). Specifically, Gallant argues that the indictment does not describe the crime of aggravated identity theft, because while it alleges that defendant used three non-unique identifiers (name, date of birth, and place of birth) that belonged to a single real person, it also specifically alleges that he used a unique identifier (social security number) that did not belong to that person, but to a completely different person.  Gallant says the information used must be viewed as a whole — and that, as pled, the identifiers used do not, as a matter of law, identify a

4

"specific individual," as required by § 1028(d)(7).[1]  In essence, Gallant argues that the indictment does not allege a violation of § 1028A because it describes the identity of a fictional composite person's identity, not that of a real person.

The government objects contending that the indictment adequately charges that Gallant used Robert Mann's full name and date of birth (and, in Count VI, his place of birth), which is sufficient to avoid dismissal of the aggravated identity theft charges.  The government also argues that it is for a jury to decide whether use of the name, date, and place of birth, and a substantially similar (and, inferentially, manipulated) social security number, is sufficient to constitute the theft of Robert Mann's identity.

An indictment, or counts of an indictment, generally are not dismissed based on insufficient evidence.  See, e.g., Costello v. United States, 350 U.S. 359, 408-09 (1956).  This is so because such action risks usurping the role of the grand jury, and would inevitably result in delay, because a defendant "could always insist on a kind of preliminary trial to determine the competency

---

[1]  To the extent Gallant is arguing that these identifying characteristics, considered together, actually point to two different people, that argument addresses the potential duplicity of the superseding indictment, rather than its failure to describe a criminal offense.  Duplicity is addressed below.

and adequacy of the evidence before the grand jury." <u>Id.</u>; <u>see also</u> <u>United States v. Pettengill</u>, ___ F. Supp. 2d ___, 2010 WL 374437, at *1 (D. Me. Feb. 1, 2010) ("A court should exercise its authority to dismiss cautiously, since to dismiss an indictment directly encroaches upon the fundamental role of the grand jury.") (quotation marks omitted).

In very limited circumstances, "a court may receive evidence on a motion to dismiss." <u>United States v. Stevens</u>, 578 F. Supp. 2d 172, 177 (D. Me. 2008) (citing <u>United States v. Ferris</u>, 807 F.2d 269, 271 (1st Cir. 1986). A district court may "dismiss charges at the pretrial stage where the operative facts are undisputed and the government fails to object to the district court's consideration of those undisputed facts in making the determination regarding a submissible case." <u>Todd</u>, 446 F.3d at 1068 (quotation marks omitted); <u>see also</u> <u>United States v. Yakou</u>, 428 F.3d 241, 247 (D.C. Cir. 2005) (collecting cases), <u>Ferris</u>, 807 F.2d at 271. In this instance, the operative facts appear undisputed, and the government has not objected to the court's consideration of those facts in deciding whether to dismiss counts of the indictment.

The crime of aggravated identity-theft is described in 18 U.S.C. § 1028A(a)(1) as follows:

>        Whoever during and in relation to any felony
>   violation enumerated in subsection (c), knowingly
>   transfers, possesses, or uses, without lawful
>   authority, a means of identification of another person
>   shall, in addition to the punishment provided for such
>   felony, be sentenced to a term of imprisonment of 2
>   years.

A "means of identification" is "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any . . . name, social security number, [or] date of birth."  18 U.S.C. § 1028(d)(7) (2010).

Defendant's motion to dismiss relies heavily on a case in which the Fourth Circuit found that the use of a counterfeit Georgia driver's license was insufficient to support a conviction for aggravated identity theft under § 1028A.  United States v. Mitchell, 518 F.3d 230 (4th Cir. 2008).  The license bore the name "Marcus Jackson"; an address in East Point, Georgia; a date of birth of October 19, 1977; and a license number that did not exist in the database of the Georgia Department of Driver Services.  Id. at 232.  The government introduced evidence of two valid Georgia driver's licenses issued to two other people:  1) a Marcus Deyone Jackson, who lived at a different address, but in East Point, Georgia, and whose date of birth was February 18,

1977, and 2) a Marcus Jackson, who lived in Forest Park, Georgia, and was born on February 24, 1976.  Id.

The Fourth Circuit emphasized the language of § 1028(d)(7), and especially the requirement that the name or number be usable (alone or in conjunction with any other information) to identify a "specific individual."  Id. at 234-35.  The court distinguished between unique identifiers, like social security numbers and fingerprints, that alone identify a specific individual, and non-unique identifiers, like a date of birth or a name, which must be coupled with other information in order to identify a specific individual.  Id. at 235-36.  Given that the only unique identifier on the driver's license was a number that belonged to no one, the court concluded that the non-unique identifiers (name, including middle name, address, and date of birth) amounted to a "hopeless muddle of non-matching and matching information."  The court also noted that the non-matching identifiers (middle name, street address, month and day of birth) were much more specific than the matching ones (first and last name, city, and birth year).  Id. at 236.

Here, the challenged counts of the superseding indictment allege that defendant used the victim's correct full name, correct birth date, correct place of birth (in Count VI), and a

social security number that, although different, was very similar in appearance to that assigned to the victim. Numbers are unique, of course, and a single digit can make all the difference in many contexts. But, a single transposition of two digits in a nine digit string could also be deemed by a jury to be either an error in an attempt to copy the victim's actual social security number, or a planned transposition designed to fool a human observer while simultaneously building in a defense to a later criminal charge, or, just a wild coincidence. It depends on the evidence presented.

In Mitchell, no single identifier was completely correct: the name lacked the correct middle name, the date of birth was correct only as to the year, and the address was correct only as to the city and state. The Mitchell court concluded that the matching information was "too general to identify a specific person in the circumstances here." Id. at 236.

In this case, however, defendant used two (in Count VI, three) pieces of correct information: a correct full name, a correct birth date, and (in Count VI) a correct birth place. A birth date and a birth place are non-unique identifiers and a name is generally a non-unique identifier. Those two or three pieces of information, in conjunction, however, are likely to

identify a single individual, especially when they are not juxtaposed with significant non-matching information.  Here, the correct information was combined with a social security number in which the first five and last two digits are in the correct sequence when compared to the victim's, and the remaining two digits are correct, but reversed in sequence.  Pleading a combination of correct non-unique identifiers and one unique identifier that is similar in appearance (i.e., capable of deceiving, and perhaps designed to deceive) to the victim's unique identifier, is legally sufficient to allege aggravated identity theft.[2]

B.   "Means of Identification" in Count XI

Relying on the same legal argument, defendant contends that Count XI should be dismissed, because it alleges that he committed aggravated identity theft by using not only another person's name, date of birth, and social security number (with two numerals reversed) but also a fraudulently obtained New Hampshire driver's license bearing the name and date of birth of another person.  Defendant says that, in analyzing Count XI, the pieces of information discussed above should be viewed as a set

---

[2] To reiterate, this determination relates solely to whether the undisputed material facts, as presented by the parties, are legally sufficient to allow the government to proceed with its case.  The court does not address whether the evidence is sufficient to support a guilty verdict at trial.

of identifiers that also contains a unique driver's license number, as well as a non-unique address, neither of which belong to the alleged victim, Robert Gordon Mann.  Defendant asserts that this set of information, as in Mitchell, is a hopeless muddle that does not identify any specific individual.  The government again counters that the issue is one for a jury.

Unlike defendant's first argument, this argument is not based on undisputed evidence.  The government does not discuss the evidence it will offer to prove Count XI, and defendant's discussion of the evidence is little more than conjecture.  Defendant assumes, without showing, that the driver's license contained a number and an address that did not belong to Robert Gordon Mann.  Moreover, the government does appear to object to the court's considering extraneous information in determining the issue.  This is not, therefore, one of those limited circumstances in which the court may consider matters beyond the information pled in the superseding indictment.

Looking at the face of the superseding indictment, defendant's argument fails.  The superseding indictment alleges that defendant used the name, date of birth, substantially correct social security number, and a license with the name and date of birth of another person.  The superseding indictment says

nothing about a contradictory address or license number, let alone whether that address or license number belonged to the same victim.  For the reasons discussed above, Count XI is not insufficient as a matter of law, and dismissal is not warranted.

C.   <u>Multiplicity of Counts II & XI</u>

Defendant also argues that Count II and Count XI allege the same conduct, in violation of the Double Jeopardy Clause of the Fifth Amendment, because he will be subjected to punishment twice for the same crime.  He asserts that both counts allege that he went to the Department of Motor Vehicles and used the exact same set of identifiers belonging to another person, that is, a name, birth date, and social security number (with two numerals reversed).  Defendant argues that these were "the exact same instances of conduct."

The government demurs, pointing out that Count II, by reference to Count I, alleges use of that information at the Department of Motor Vehicles, while Count XI, by reference to Count X, alleges a separate additional use of that information at TD Bank.

"'An indictment is multiplicitous and in violation of the Fifth Amendment's Double Jeopardy Clause if it charges a single

12

offense in more than one count.'" United States v. Cameron, 662 F. Supp. 2d 177, 181 (D. Me. 2009) (quoting United States v. Brandon, 17 F.3d 409, 422 (1st Cir. 1994)).  But, "a defendant may be charged and prosecuted for the same statutory offense multiple times when each prosecution is based on discre[te] acts that each constitute a crime."[3]  United States v. Goodine, 400 F.3d 202, 208 (4th Cir. 2005) (citing Ashe v. Swenson, 397 U.S. 436 (1970).  Where "[e]lements and facts of each substantive count are different from those in all other counts charged under the same statute, and each count recites a separate and distinct prohibited act," the counts are not multiplicitous.  United States v. Swain, 757 F.2d 1530, 1536 (5th Cir. 1985).  "When the same statutory violation is charged twice, the question is whether Congress intended the facts underlying each count to make up a separate unit of prosecution."  United States v. Chipps, 410 F.3d 438, 447 (8th Cir. 2005) (citing Bell v. United States, 349 U.S. 81, 81, 83-84 (1955)).  Cf. United States v. Montilla Ambrosiani, 610 F.2d 65, 69 (1st Cir. 1979).

---

[3] Defendant suggests that the Blockburger test applies. Blockburger v. United States, 284 U.S. 299, 304 (1932).  He is incorrect.  "That test applies to determinations of whether Congress intended the same conduct to be punishable under two criminal provisions."  United States v. Kimbrough, 69 F.3d 723, 729 n.5 (5th Cir. 1995) (citing Sanabria v. United States, 437 U.S. 54, 70 n.24 (1978)).  Here, Counts II and XI charge violations of the same criminal provision, at different times and in different places.

13

Count II alleges that, in the period from April 5, 2001, to February 26, 2006, defendant used another person's name, date of birth, and social security number (with two numerals inverted) in relation to the acts alleged in Count I.  Count I alleges that defendant falsely represented his social security number to the New Hampshire Department of Motor Vehicles in order to obtain four duplicate, one replacement, and one renewed, driver's licenses.  Count XI alleges that, in the period from July, 2005, to October, 2006, defendant used another person's name, date of birth, and social security number (with two numerals inverted) in relation to the acts alleged in Count X.  Count X alleges that defendant defrauded TD Bank.  While the alleged "means of identification" appear to be identical in Count II and Count XI, the dates, the victims, the goals of the offenses, and the predicate crimes differ.

One of the elements of aggravated identity theft is that it must be committed "during and in relation to any felony violation" specified in the statute.  18 U.S.C. § 1028A(a)(1); see also United States v. Bonilla, 579 F.3d 1233, 1242 (11th Cir. 2009) (listing elements of aggravated identity theft), United States v. Reed, No. 08-3610, 2009 WL 3471073, at *2 (3d Cir. Oct. 29, 2009) (listing elements of aiding and abetting aggravated identity theft).  In order to prove its case on Count II, the

government will have to show that defendant falsely represented his social security number, but to prove Count XI, the government will have to show that defendant defrauded a bank.  The alleged acts in Counts II and XI are different, and they require proof of different factual predicates.  They are not multiplicitous.  Cf. Bonilla, 579 F.3d at 1242-43 (holding that identity theft and aggravated identity theft charges were multiplicitous where the predicate criminal offense was a single criminal act).

D.     Intent to Defraud in Counts X & XI

Defendant also challenges the sufficiency of the allegations in Count X, the bank fraud charge.  Defendant asserts that, although he allegedly opened an account in the name of Robert Mann, he used it thereafter in a legitimate manner.  He contends that he made deposits and withdrawals in an "essentially legal" manner for several months and then overdrew his account by a small amount, resulting in a negative balance of $656.13, more than half of which represented bank handling and overdraft fees.  Relying on United States v. Orr, 932 F.2d 330 (4th Cir. 1991), defendant contends that the mere giving of a false name to a bank cannot sustain a charge under 18 U.S.C. § 1344.  Accordingly, defendant seeks dismissal of Count X, the bank fraud charge, as well as Count XI, the related aggravated identity theft charge.

The government understands Orr as standing only for the proposition that a § 1344 charge fails where there is no evidence of loss to the bank.  Since TD Bank allegedly suffered a loss, the government argues, Counts X and XI should not be dismissed.

As with defendant's first argument, it is unclear whether this is a circumstance in which the court may examine undisputed operative facts outside the superseding indictment.  But the parties appear to agree that TD Bank suffered some loss more than a year after defendant allegedly used fraudulent information to open the account.  The government states that there is sufficient evidence to support a guilty verdict, but it does not state, as it did with regard to defendant's first argument, that this is a case that a jury must decide.  So, this appears to be a situation in which the court may consider the undisputed operative facts.

Defendant is correct that Orr required some nexus between the use of a false identification to open a bank account and the defendant's later writing bad checks.  932 F.2d at 332.  Orr, however, was a case reviewed on appeal, after a jury trial.  In holding as it did, the Fourth Circuit relied upon the fact that "[n]o evidence [was] produced to show that the use of the name 'Rogers' as opposed to 'Elkins' was done with intent to defraud the bank."  Id.  Here, neither defendant nor the government has

16

described any evidence regarding intent or lack of intent. There is no undisputed operative fact upon which the court can determine that Count X is legally insufficient.

In United States v. Antonelli, No. 97 CR 194, 1997 WL 672245, at *1 (N.D. Ill. Oct. 27, 1997), defendants charged with bank fraud moved to dismiss the indictment, relying in part on Orr. In denying the motion, the district judge recognized that the false information that the defendants provided to the banks "induced the banks to deal with the defendants." Id. Moreover, the court pointed out, the false information "could have prevented the banks from discovering the alleged scheme, and from locating the defendants if the scheme was discovered." The court also noted the difference in the procedural posture of Orr: "While the government in Orr failed to produce any evidence to show that those defendants intended to defraud the bank, it is entirely possible that the government may be able to prove the requisite intent in the instant case." Id. at *2. The act of presenting false information to the banks was "sufficient to allege that the defendant intended to cause a loss to the bank . . . [and] [w]hether the defendants actually held this intent is a question for the jury." Id. at *1.

Antonelli is directly on point.  This is a motion to dismiss counts of the superseding indictment, not a motion for judgment of acquittal.  There is no undisputed proof of intent from which the court can determine that Counts X and XI are insufficient as a matter of law.  As in Antonelli, the allegations in the superseding indictment are sufficient to withstand a motion to dismiss.

E.   Duplicity of Counts II, VI, IX, and XI

Defendant argues that Counts II, VI, IX, and XI must be dismissed because they are duplicitous.  Since those counts involve the alleged use of Robert Gordon Mann's correct name, date of birth, and place of birth (in Count VI), but a social security number assigned to one Mabel Parker, defendant says, the jury may find him guilty without reaching a unanimous verdict.  That is, some members of the jury may find that he committed aggravated theft of Robert Mann's identity, while others may find that he committed aggravated theft of Mabel Parker's identity.  Since these are two different offenses, defendant contends, joining them in a single count renders that count duplicitous.

It appears that the government objects to this argument, because it asks that the court deny defendant's motion to dismiss.  The government does not, however, address defendant's duplicity argument.

A charge is duplicitous if it joins "two or more distinct offenses in a single count of an indictment." United States v. Trainor, 477 F.3d 24, 31 (1st Cir. 2007). "The primary vice of duplicity is that a jury may find a defendant guilty on the count without having reached a unanimous verdict on the commission of any particular offense." Id. at 32, n.16 (quotation marks omitted).

Unlike in the cases defendant relies upon, the challenged counts here are not duplicitous. They do not allege two distinct criminal offenses. The superseding indictment says nothing about Mabel Parker, or her actual social security number. Rather, it is alleged that Gallant used "the name, date of birth and social security number, with two of the individual numerals in the number reversed, of another person."[4] "A count is duplicitous when it charges more than one offense in a single count." United States v. Valerio, 48 F.3d 58, 63 (1st Cir. 1995) (emphasis in original). Where "the evidence underlying the count allegedly could . . . give[] rise to [two] separate counts," there is no duplicity. The concern that a jury may find a defendant guilty without reaching a unanimous verdict "[o]bviously . . . only becomes a problem when the indictment actually charges two or

---

[4] Count VI also alleges the use of the place of birth of the same person.

19

more offenses in a single count." Id. (emphasis added). Counts II, VI, IX, and XI each allege only one offense: the theft of an identity belonging to a single individual. The counts are not duplicitous.

## Conclusion

For the foregoing reasons, defendant's motion to dismiss (document no. 22) is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

April 16, 2010

cc:  Alfred J. T. Rubega, Esq.
     Jonathan R. Saxe, Esq.